Please the court. I represent the defendant counterclaimant and the appellant CSAA Insurance Exchange. I would like to reserve two minutes for rebuttal. I'm here today to refer to three of the cases that we previously cited in our briefs and to argue the following three points. The first one is that the district court erred in denying CSAA summary judgment given that Rockhill acted in bad faith by failing to afford as much consideration to the rights of its insured as it did and it gave to its own rights when defending the insured in a high exposure case under the burning limits pollution liability coverage. Second, that the district court erred by finding that the general liability policy did not apply even though property damage was caused by a chemical by giving a broad interpretation to the mold exclusion. Third, that the district court erred in granting Rockhill summary judgment when of material fact with regards to the conduct of Rockhill were in place. If the court agrees with us on the first issue, that should end your analysis. If you disagree with us on the first issue, you would proceed to issues two and three. As to the first issue, the district court erred by finding that this case was a good faith dispute over whether the commercial general liability coverage applied. CSAA's counter complaint and its pleadings in the trial court made it very clear that this was not a dispute over coverage, but rather a dispute that Rockhill failed to give at least as much consideration to the rights of its insured as it gave to its own rights. The liability case against Rockhill's insured was strong with hard damages of two to $3 million. And at most, Rockhill having only a million dollars of liability coverage. Well, how do you say that they failed in their duty to their insured? I'm sorry? How would you say that they failed in their duty to their insured? By not settling the case when they should have. The law is very clear. Your first offer of settlement was higher than what remained to be obtained because it was a burning limits provision. That is true. But what the odd number signaled was that this was an willing to take less than the policy limits. You mean a dollar less? Whatever was the offer at that point. CSAA at that juncture had not invested $100,000 plus in costs. Rockhill at that point still had well in excess of $900,000 left on its liability coverage. CSAA made it clear that it was interested in pursuing the settlement options. And the undisputed declaration of CSAA Vice President Robert Sturm says that CSAA would have accepted less than the $100,000,000 in response to its initial settlement demand if they had been offered. And in support of that, it points out that CSAA doesn't try segregation cases. Ninety nine percent of CSAA's segregation cases are settled. So the key issue is, was there an opportunity to settle the case? And there was. Well, you may have put in this declaration, but did you tell Rockhill? No, CSAA was waiting for a response from Rockhill. When Rockhill ignored the 30 days time limit for responding to CSAA's settlement demand, then Rockhill shut down the settlement discussions by offering $101,000, only five percent of the damage exposure in a strong liability case. That shut down the settlement negotiations at that time. Well, but the policy was only for a best set of circumstances. The policy coverage was only a million dollars. Yes. So a hundred thousand is at least 10 percent. Well, as far as the, yes, as to the available policy limits, it was 10 percent. As to the amount of the claim, it was five percent. The minimum claim was $2 million with an exposure up to $3 million. Okay. When there is a great risk of recovery beyond policy limits, the need to give at least as much consideration to the rights of the insured as the insurer gives to its own rights requires the insurer to settle a case. Its unwarranted refusal to do so is a breach of the implied covenant of good faith and fair dealings. So what should it have settled the case for and when? I'm having trouble hearing. What should it have settled the case for and when? At that time, CSAA would have responded, yes, we will accept that. And the case would have been settled. Do we know that they would? Do we know they would have accepted that? Didn't they turn down $700,000 when that was all that was left? Oh, sure. Many months later when Rock Hill had burned through $300,000 of its insured's million dollars of coverage and CSAA had incurred over $100,000 of costs, it was too little too late. In burning limits coverage cases, it is crucial that the carrier not unreasonably delay in responding to settlement opportunities. We didn't get a realistic settlement offer from Rock Hill until the first day of trial. That was an unreasonable delay in this high exposure case that was in bad faith. It failed to give the same merits to the insured's as it gave to its own rights. Were the damages contested at the underlying trial? Yes, and rejected by the finder of fact. The trial court in San Francisco handed down a 37 page statement of decision, very comprehensive, explaining exactly why the dispute over the damage claims was extremely weak and pointed out that the evidence was extremely strong. What Rock Hill was doing was trying to work out a cheap settlement, and they could do that at no cost to itself because the insured was paying the defense costs. So it continued to try to get a cheap settlement in to its advantage while sacrificing the rights of its insured to get a settlement near the amount of its available policy limits. The case that shed an unwarranted refusal to settle a case when there is an opportunity to do so is Commonweal versus Traders and General Insurance Company cited in our brief. It is just that simple. You are required to settle the case under these circumstances. When Rock Hill received CSAA's $999,999 settlement opportunity, as I said, it should have responded to CSAA, but it also should have notified its insured of the settlement demand, advised the insured that it had $900 and some odd worth of insurance coverage left, and asked the insured if the insured wished to pay the difference. That's required of the carrier. Rock Hill didn't either. It didn't disclose it was defending under burning limits, and it didn't notify its insured of this settlement opportunity when it should have. As I say... Wouldn't the insured be aware that the coverage was so-called burning limits type coverage? I mean, they entered into this contract for the insurance coverage. Wouldn't they be aware of what the nature of the coverage was? It was at that time and still is CSAA's position that there was coverage under both policies. However, it was willing to take what was left of the burning limits policy if it had been offered early on as it should have been. So it didn't create its settlement demand the way it is. You know, these burning limit policies create an enormous conflict of interest between the insured and the insurer because the insurer can try to get a cheap settlement at the expense of the defense costs that are paid by its insured. This conflict of interests between the insurers and the states. The states have either made burning limits coverage illegal or have restricted how it can be used. The district court held that CSAA had to make a policy limit settlement demand and it failed to do that. And therefore it could not pursue its policy limit collection. What happens is that the settlement opportunity is the yardstick by which Rock Hill's decisions have to be made and not whether there was a policy limits demand. You know, public policy is very strong about wanting insurance carriers to settle cases. And clearly under the case law that we've cited, the opportunity to settle is the standard. And we're citing Reed versus Mercury Insurance Company, which is of course cited in our brief, and the federal court cases included therein, including the Ninth Circuit case of Dibbs v. State Farm. So the undisputed evidence was that the case should have been settled and would have been settled if there had been a responsible answer to the opportunity to settle by Rock Hill. The trial court also said, denied CSAA's motion because it said Rock Hill was relying on the advice of the insurer. This is not a defense in this case where the insurer fails to give equal consideration to the rights of its insured as it gives to its own rights. The authority for that is set forth in the Judicial Council of California Civil Jury Instructions, called Cassie Instructions 2335, and the case is cited in that instruction. Do you have any Nevada law on this subject? I'm sorry, I'm having trouble hearing. Do you have any Nevada law on this subject? Nevada law is the same as California law as I understand it. And Nevada law requires, in this case, it requires that while Nevada law initially applies, then Nevada law says that California had the greatest interest in the case and they would defer to California. But even if there was no Nevada law, it wouldn't make any difference because the important thing is that there was no Nevada law contrary to the California law on this. The Nevada laws don't cover all of the California, but what normally happens is that there is a Nevada defers and follows the California law. So that on the second issue about the broad interpretation of the ambiguous mold exclusion, we've covered that pretty thoroughly in our written briefs, but clearly under usual interpretations of insurance policies, exclusions are given narrow exclusions, narrow interpretations, and the insuring agreements are given broad interpretations. This wasn't done. And Council, you're well over your time limits. You're over your time limits right now. So thank you from the other side. And I will conclude, Your Honor. Okay, thank you. Hi, this is Sam. I'm so sorry to butt in really quick, but Judge Eaton, your image is stuck sideways. Could you try rotating your camera really quick? That's much better. Thank you so much. Okay. Mr. Hussman. Yes. May it please the court. My name is John Hussman, and I represent Rock Hill Insurance Companies. I will address the issues in this case in the order the district court did. And the district court was correct in finding number one, that the mold exclusion eliminates any coverage under the Rock Hill general liability policy, and two, that no viable claim for bad faith exists in this case as a matter of law. Um, the district court was was correct because it found that the pollution part of the coverage of the policy applied to the claims by CSAA against Rock Hills Insured Premier. Um, and then it went on to find that the mold exclusion in the general liability coverage part of the policy precluded any coverage. Um, the the pollution, um, coverage part applies because it applies to the release of pollutants, and it also applies on its face to a mold pollution condition. On the other hand, the general liability policy contains a mold exclusion, and the terms of that exclusion unquestionably cover damage because of the over spraying of a chemical to prevent mold. Um, specifically, that property damage or a claim which would not have occurred in whole or in part, but for the actual alleged or threatened growth or migration of mold. So, um, you know, it clearly covers, uh, damages and is not limited to just damage caused by mold, which is what CSAA's position has been all along in this case. Well, how about why? Why don't you just get to the, uh, the bad faith portion of the argument? Absolutely. I think it's important, though, to point out that these two coverage parts, um, you know, this is exactly what, uh, CSAA demanded that it's in its vendors like Premier get. The vendor agreement says that the vendors had to get general liability coverage without and it could not have eroding limits or burning limits. And then if it did mold work, that vendor also had to get mold and pollution type coverage, and it doesn't say anything about not having burning limits. It's not prohibited, and that's exactly what the point there is that CSAA is not a bystander to how this coverage program was put together. It was, in a way, the architect of it. So the fact that it was making demands, um, it should have known that it was making above limits demands. Um, you know, in the, you know, it tried to make demands to settle this case. Um, so, okay, to address the bad faith, the district court was correct. There's no there's as a matter of law, there's not bad faith here. Um, and and and the issue and the reason is important. And CSAA has kind of tried to ignore this. But there's a predicate to any claim for bad faith failure to settle. Um, and that predicate is that there was a settlement demand made within policy limits, and that didn't happen here. Um, the only applicable coverage was the and therefore the $999,999 demand was above it. It's important to know that even if, um, the if you if the court held the other way and found that the general liability limit applied, and it was really a million dollar limit, um, Rockhill, there's still no bad faith here because Rockhill reasonably believed that the eroding pollution coverage applied. Um, there's a reasonable dispute over coverage. Um, you can't find that there either. But if we have just a million dollars under a burning limits policy, and you know you're insured is going to be on the hook for the remainder, and you just effort to really settle the case. Why isn't that when there's a high likelihood of an adverse? This was a very strong. This was very negligent on Premier's part. It was a high likelihood they were gonna lose this case. Why isn't that objective bad faith? Well, because because in the hypothetical that you pose that that's not this case. Um, at the time, the premier made it's, you know, 999 demand. Um, the none of these issues were also clear. Um, you know, are insured believed in our Defense Council believed that they had. They had done. They had followed the standard of care in terms of how they handled the chemical. Um, and, um, the, um, you know, and we follow that advice all along. Um, we at every step in this process, Rock Hill actively made settlement moves in accordance with what Defense Council was concluding regarding the reasonable amount of liability and damages in this case. Um, the other, you know, so to say that it was a clear case of liability or that you know, just because C. S. A. A. Prevailed doesn't mean that Premier and its Defense Council and Rock Hill were wrong to ever question their claims. I mean, um, and that is really, you know what? What it means to have a defense to a bad faith case, which is that if you act reasonably, you're not in bad faith. Um, and we acted reasonably at all times. Um, you know, C. S. A. A.'s essential argument is that because Rock Hill didn't immediately agree with C. A. A.'s view of the case, um, and that, you know, its view of liability and its view of these damages, then it was, um, you know, that that that failure to was there a summary judgment motion that was made and denied, um, in advance of that trial? Um, I don't know the answer to that, but I I don't. I'm not aware of one. Um, the, um, you know, there were there were a lot of issues, including expert witness issues, including issues of whether C. S. A. A. Uh, properly ever tried to remediate the house, whether those efforts were sufficient, whether they, you know, were given time to work, um, and so forth, uh, you know, before they went and tore the house down so that I would think that that might have precluded, you know, a summary judgment. Um, those fact issues in in the you know, but the simple fact is that insurers are protected from bad faith if they follow the advice of Defense Council. Um, and they're not forced to settle or win every single case. Um, you know, um, you know, to hold the other way that just because C. S. A. A. One is segregation. It's underlying segregation case would be to turn insurance law on its head. It would takes a case to trial, and it turns out worse than anyone expected. You know, anyone on the defense side expected it would. Um, and, you know, here the defense side, Rock Hill Premier, it's insured and Defense Council agreed all along on the settlement offers on strategy on that C. S. A. A. S. Case was significantly overvalued, given that it tore the house down without what you know what we believed sufficient remediation efforts. Um, so, you know, and as that liability and damages picture clarified, as cases mature, Rock Hill eventually offered its remaining policy limit. But C. S. A. Turned us down. Um, um, and, you know, refused to accept it. Um, you know, C. S. A. A. Once this court to ignore the fact that no demand within limits was made, and instead they want to fall Rock Hill for not somehow convincing C. S. A. A. That the eroding limits pollution applied. I mean, you know, C. S. A. A. Is continually argued that when we got a $999,000 demand that the response should have been to go to them and say, you know, let's settle, even though at that point, our defense council was telling us the case. You know, a reasonable settlement offer would have been $40,000. So, you know, there's no duty at that point. But even if even if you know that the that Rock Hill was supposed to divine that C. S. A. A. Had made a mistake about the limits. Um, there's no indication that had we gone to them that they would have believed us that the that the pollution limit applied. I mean, they're still arguing that that the general liability $1 million limit applies and that the, um, and that the mold exclusion is not applicable. So the idea that, you know, um, Rock Hill could have gone to C. S. A. A. At that point in the case and, uh, you know, had to educate and then convince them what the limits were. Um, is, you know, it's pretty absurd to there that that they would have believed us or accepted, uh, settlement at that level. Um, and there's no evidence to indicate that in this case that C. S. A. Would have accepted any settlement below the one the one demand that it did make. Um, I mean, of course, they say so now, but, um, there's nothing in the record to indicate that would have been the case. Um, you know, uh, you know, a bottom C. S. A.'s position really creates sort of a, uh, tails. We win heads. You lose sort of scenario. On the one hand, C. S. A. Is saying that, you know, both of the coverage parts applies on. It was bad faith not to accept their $999,000 demand. But on the other hand, C. S. A. Says that if the eroding limit applies, then Rock Hill should convince C. S. A. Of that fact, and that C. S. A. Would have settled. So it's kind of like, you know, there's there's no win there unless Rock Hill would have done would have just, you know, immediately agreed at the, you know, a few months into the case that a, uh, that it was a million dollar case, despite the, you know, analysis and advice of Defense Council. Um, yeah. Give me a second. Um, you know, C. S. A. A. Bar here is to prove that Rock Hill's conduct was unreasonable. Well, it's first its first hurdle is to find a settlement demand within limits, and it can't. But even if it was even if there was a to show that Rock Hill's conduct was unreasonable, but but C. S. A. Can't really do that. So, um, what what they do is create a lower burden for themselves, which is, you know, that, um, that's that Rock Hill had an obligation to go and educate C. S. A. A. About the coverage and then convince them to take, uh, the lower, um, limit. And they had to do that because they Um, you know, C. S. A. Insist that Rock Hill put its own interest to have premieres. Um, you know how that just doesn't bear out, given the repeated, consistent attempts to settle the case, including offer the remaining limits, you know, before trial immediately before trial. Um, and the record shows that, you know, Defense Council was, uh, contesting all these issues. Damages liability after careful analysis. So, um, this simply is not a bad faith case here. So, um, in conclusion, your honors, the mold exclusion plainly excludes C. S. A. S. Claims C. S. A. A. S. Attempts to rewrite or circumvent that exclusion have no support in the law. Um, it's just not possible for a bad faith case to exist in here because there was never a demand within the applicable limits. And at minimum, there was a reasonable dispute over those what the limit was. Um, at faith can never be shown here because Rock Hill acted reasonably in relying on the advice of its counsel. And for these reasons, the judgment of the district court should be upheld in its entirety. All right. Thank you, Counsel. Mr E. B. I'll give you a minute. Thank you, Your Honor. There was on the first day of trial. I was charged with a bad faith case, uh, by taking the remaining policy limits that Rock Hill had of $700,000, giving their insured a full release and having the two insurance carriers fight it out in a declaratory relief action over whether Rock Hill was responsible for paying the remaining $1.3 million. That was the opportunity that Rock Hill should have seized immediately saying we've got to protect our insured. We've gambled and we've lost. Uh, but no, they say, Well, we'll just let the insured pay the penalty for our bad decisions on on gambling. This case. There was no advice of counsel in making that decision. Rock Hill made it all on its own. Thank you, Your Honor. Thank you, Counsel. Um, okay. I'm sorry. Give me one minute or two. I thought I heard one. Give you one minute because you were out of your time. You are over your time. Thank you again. Thank you. Um, Rock Hill, uh, insurance companies versus C. S. P. A. Insurance. It's needed to pick up a day. Uh, okay. Sacramento.
judges: Wardlaw, Eaton, Collins